**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NEW YORK STATE TEAMSTERS CONFERENCE**          5:09-CV-1318 (NAM)(GHL)
**PENSION AND RETIREMENT FUND, by**
**its Trustees, John Bulgaro, Gary Staring,**
**Ronald G. Lucas, Daniel W. Schmidt,**
**Michael S. Scalzo Sr., Tom J. Ventura,**
**Bob Schaefer and Steven S. Mazza,**

                                    **Plaintiffs,**
          **vs.**

**STAATS EXPRESS, INC., and any and all unnamed**
**members of its controlled group,**

                                    **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

Paravati, Karl, Green & DeBella                  Vincent M. DeBella, Esq.
12 Steuben Park
Utica, New York 13501
_For Plaintiffs_

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM DECISION AND ORDER

### BACKGROUND

        On November 25, 2009, plaintiffs, New York State Teamsters Conference Pension &

Retirement Fund, ("Pension Fund"), by its Trustees, John Bulgaro, Gary Staring, Ronald G.

Lucas, Daniel W. Schmidt, Michael S. Scalzo Sr., Tom J. Ventura, Bob Schaefer and Steven S.

Mazza, filed this action alleging that defendant Staats Express, Inc., violated the Employment

Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension

Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 _et seq_.  According to the

complaint, the Pension Fund is an employee benefit fund which was created and exists pursuant to Agreements and Declarations of Trust entered into between participating employers and union locals affiliated with the International Brotherhood of Teamsters ("Teamsters").  It is a multi-employer plan ("Plan") as defined in 29 U.S.C. § 1002(37)(A).  To participate in the Plan, local unions and employers must execute a collective bargaining agreement with the Teamsters and a participation agreement requiring the employer to participate with the Fund.  The Pension Fund pays pension and retirement benefits to qualified participants in the Plan and receives contributions from employers pursuant to collective bargaining agreements between employers and Teamsters locals and participation agreements between employers and the Pension Fund.

According to the complaint, during all relevant time periods, defendant was party to a collective bargaining agreement which required it to make contributions to the Pension Fund on behalf of its employees.  Defendant was also party to a participation agreement which required it to make contributions to the Pension Fund "on behalf of all eligible and appropriate employees."  Plaintiffs allege that defendant "permanently ceased all covered operations under the Plan and/or permanently ceased to have an obligation to contribute to the Plan."  As a result, plaintiffs determined that defendant "had completely withdrawn from the Plan . . . and assessed, the defendants a withdrawal liability in the sum of $600,809.34."

The Pension Fund notified defendants of the amount of the withdrawal liability in letters dated July 2, 2009 and July 15, 2009.  In those letters, the Pension Fund advised defendants that they were required to make monthly payments of $7,912,74 for 101 months, and a final payment of $6,627.98.  The complaint states that the first payment was due on September 2, 2009.  In a letter dated September 10, 2009, the Pension Fund noted that defendants failed to make the

scheduled interim withdrawal liability payment and informed defendants "that if said payment was not made within 60 days, the defendants would be in default and the withdrawal liability would be immediately due and owing."  Plaintiffs allege in the complaint that defendants have failed to make the interim payments and have defaulted on the withdrawal liability.  According to the complaint, defendants have not requested a review or demanded arbitration within the statutory time period under the MPPAA.  As a result, plaintiffs seek "judgment against the defendants for $600,809,34 together with an award of interest thereon from the due date when the first scheduled payment was not timely made, an additional award of the greater of interest or liquidated damages, [and] reasonable attorney fees and costs".  To date, defendants have not filed an answer or otherwise appeared in this action.

On February 3, 2010, plaintiffs obtained a Clerk's Entry of Default.  Dkt. No. 7.  On April 20, 2010, plaintiffs filed a motion requesting that the Court enter default judgment against defendants.  In support of their application, plaintiffs filed an affidavit by Kenneth R. Stilwell, Executive Administrator for the Pension Fund.  Stilwell avers that the Pension Fund "determined that the Defendant incurred an employer withdrawal liability in the amount of $600,809.34" and attached a copy of the withdrawal liability calculation to his affidavit.  According to Stilwell, despite three letters notifying defendants of the amount of withdrawal liability, and the Pension Fund's provision of a schedule of interim payments, defendants failed to make any payment. Stilwell asserts that by letter dated September 10, 2009, the Pension Fund notified defendants that an action for collection would be commenced if the default was not cured in sixty days. According to Stilwell, defendant has not made payment, requested a review, or filed a demand for arbitration.  Stilwell asserts that the Pension Fund adopted a Plan interest rate of eleven percent

(11%), and utilizing this rate, the interest sum from September 10, 2009, the date defendant defaulted on its interim payment, through and including the return date on the motion for default judgment, June 2, 2010, is $47,982.44.  Additionally, Stilwell states, under ERISA, the Pension Fund is entitled to another payment equal to the greater of interest or liquidated damages. According to the rules of the Pension Fund, liquidated damages are calculated at ten percent (10%) of the liability assessment, which in this case equals $60,080.93.  Stilwell further avers that from June 2, 2010, the return date on the instant motion, until the date of entry of judgment, the Pension is entitled "to interest at 11% in the amount of $181.06 per diem."  Stilwell states that the Pension Fund also seeks post-judgment interest as well as attorneys' fees and costs.

### DISCUSSION

Under Rule 55(b) of the Federal Rules of Civil Procedure, default judgment shall be entered if a defendant has failed to plead or otherwise defend an action." *Parise v. Riccelli Haulers, Inc.*, 672 F.Supp. 72, 74 (N.D.N.Y. 1987).  Rule 55(b)(2) and Local Rule 55.2 set forth the procedural prerequisites plaintiffs must meet before their motion for default judgment may be granted.  Plaintiffs must: (1) properly serve defendant with a summons and complaint (to which no response has been made); (2) obtain an entry of default; and (3) provide an affidavit setting forth the facts required by L.R. 55.2(a), including an affidavit showing that defendant is not an infant or incompetent, or in the military service.  *See* Fed. R. Civ. P. 55(b)(2); N.Y.N.D.L.R. 55.1 and 55.2.

Defendant has not answered or otherwise moved with respect to the complaint.  Plaintiffs received a clerk's entry of default on February 3, 2010.  On April 20, 2010, plaintiffs filed a motion for default judgment pursuant to Rule 55(b)(2).  Plaintiffs have submitted an affidavit by

their counsel showing that defendants are not infants or incompetent, and are not in the military service.  Therefore, plaintiffs have fulfilled the procedural prerequisites for default judgment.

### *Liability and Damages*

"A party's default is deemed to constitute a concession of all well-pleaded allegations of liability."  *Resolution Trust Corp. v. Forney*, 1993 WL 61415, *1 (W.D.N.Y. June 28, 1993) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty*, 973 F.2d 155, 158 (2d Cir. 1992)).  The allegations in plaintiffs' complaint and supporting documents are therefore presumed accurate.

"The MPPAA requires an employer that withdraws from a multiemployer pension plan to pay its proportionate share of the plan's unfunded vested employee benefits, the so-called withdrawal liability."  *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 803 (2d Cir. 1994) (citing 29 U.S.C. §§ 1381 (1988), 1391 (1988 & Supp. IV 1992)).  The withdrawal liability represents "the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets."  *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984)).  Under ERISA, to dispute the fact or amount of withdrawal liability, an employer must seek arbitration in a timely manner after receiving notice that it is subject to withdrawal liability.  29 U.S.C. § 1401(a)(1).  "Failure to initiate the review and arbitration procedure constitutes a waiver of defense to the fact or the amount of the corporation's withdrawal liability."  *Retirement Fund of the Fur Mfg. Indus. v. Strassberg & Tama, Inc*., 88 CIV. 6034, 1989 WL 87483 (S.D.N.Y. July 31, 1989).  Additionally, plaintiffs are entitled to an award of interest, liquidated damages, and attorney's fees and costs.  *See* 29 U.S.C. § 1451(b) ("In any action . . . to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment

5

within the time prescribed shall be treated in the same manner as a delinquent contribution"); *see also* 29 U.S.C. § 1132(g) ("in any action [involving delinquent contributions] . . . in which a judgment in favor of the plan is awarded, the court shall award the plan - . . . (B) interest . . . (C) an amount equal to the greater of (i) interest on the unpaid [withdrawal liability], or (ii) liquidated damages . . . , (D) reasonable attorney's fees and costs").

Plaintiffs have established that defendant Staats Express, Inc., as the business which signed the collective bargaining agreement, withdrew from the Plan. Thus, Staats Express is liable for its proportionate share of the Plan's unfunded vested employee benefits. According to the complaint, Staats Express did not seek arbitration or otherwise dispute the amount of withdrawal liability as calculated by plaintiffs. Thus, plaintiffs have established defendants' liability in this case.

According to the affidavit by Kenneth Stilwell, the withdrawal liability in this case is $600,809.34. Plaintiffs also seeks interest at the Plan interest rate of eleven percent (11%), which, according to Stilwell, amounts to $47,982.44. This is the amount of interest that accrued from September 10, 2009 through June 2, 2010. *See* 29 U.S.C. § 1399(c)(5) ("in the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.") Plaintiffs also seek an award of interest from June 3, 2010 through the date of judgment in this case at the eleven percent rate of interest, which, according to Stilwell, equals $181.06 per day.

Additionally, plaintiffs seek an award of liquidated damages. The rules of the Pension Fund state that liquidated damages are calculated at ten percent (10 %) of the withdrawal liability

assessment, which, in this case, equals $60,080.93.  Since the amount of liquidated damages is greater than the amount of interest, plaintiffs request an award of liquidated damages.

In view of the affidavits and documentary evidence submitted by plaintiffs, a hearing to ascertain the damages in this case is unnecessary.  Plaintiffs have demonstrated their entitlement to damages in the sum of $708,872.71, plus interest from June 3, 2010 through the date judgment is entered at the eleven percent rate of interest, or $181.06 per day.

### *Attorney's Fees and Costs*

Plaintiffs are also entitled to recover reasonable attorney's fees and costs.  29 U.S.C. § 1451(e) ("In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party").  Plaintiffs request $5,376.00 in attorney's fees and $420.00 in costs.  Plaintiffs submit attorney time records which the Court has reviewed.  They indicate that 19.20 attorney hours at $280.00 per hour were spent on this matter in 2009 and 2010.  However, the Court finds a number of the charges unreasonable.  Plaintiffs' attorney, Vincent DeBella, previously obtained an award of attorneys' fees in connection with a default judgment in *New York State Teamsters Conf. Pension & Retirement Fund v. Staats Express, Inc*., 5:09-CV-441 (NAM/GHL), Dkt. No. 12, ("*Pension Fund I*"), a related case, and action against Staats Express for the collection of delinquent contributions and deductions.  Having reviewed the time records in both cases, there appear to be a number of tasks Attorney DeBella completed in *Pension Fund I* that Attorney DeBella bills for again in this action.  For example, the time entries in *Pension Fund I*, and the time entries in this case for, September 11, 2009, September 21, 2009, and September 29, 2009, are identical.  Though the cases are related, Attorney DeBella has already been awarded fees for

7

this work, and is not entitled to be paid twice for the same work.

Moreover, the Court finds a number of the time entries in this case are also unreasonable. For example, the time entries on January 29, 2010 and January 30, 2010, state, *inter alia*, "Received and reviewed Notice from Court Clerk." Although counsel filed documents on February 29, 2010, there were no filings or notices in this case on January 30, 2010. Further, counsel's request for reimbursement for .20 hours, or twelve minutes, for reviewing a one page, two sentence, Clerk's Entry of Default, is excessive. Counsel's request for reimbursement for .20 hours, or twelve minutes, for reviewing a two sentence Text Notice from the Court on March 11, 2010, is also excessive. Thus, the Court reduces the amount of hours for which plaintiffs seek an award of attorney's fees, 19.20, by twenty percent (25 %), to 14.40 hours.

With respect to hourly fees, the Second Circuit has held that courts are to award the presumptively reasonable fee, that is, the fee that would be paid by a reasonable paying client in the relevant community. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191-93 (2d Cir. 2008). The Court notes that Attorney DeBella has extensive experience and expertise in this field of litigation. Due to the nature of the claims, a substantial amount of expertise, time, and labor is required to pursue the claims successfully, even though in some cases recoveries may be relatively small. Here, counsel has succeeded in obtaining a judgment recovering withdrawal liability, interest, and liquidated damages. The importance of this case lies not only in recovering benefits for the affected employees, but also in conveying the message to employers and workers that the ERISA requirements will be enforced. The Court is aware of attorneys' fee awards in similar cases in this community; it has recently been determined that the prevailing rate in this community in a similar case by the same attorneys

8

is $210 per hour for experienced attorneys.  *See Engineers Joint Welfare, Pension, Supp. Unempl. Benefit & Training Funds v. Reape* ("*Reape*"), 2008 WL 2385908, *4 (N.D.N.Y. 2008).  In light of these factors and the Court's own knowledge of the rates prevailing in the legal community, the Court finds that the rate in *Reape* is the reasonable fee in the case at bar.  Plaintiffs have not submitted evidence warranting a different result.

Accordingly, the award of attorney's fees and costs is the sum of $3,444.00, which represents: (1) $3,024.00 (14.40 x $210) for Attorney DeBella's services; plus (2) $420.00 in costs.

## CONCLUSION

It is therefore

**ORDERED** that plaintiffs' motion for default judgment is Granted; and it is further

**ORDERED** that plaintiffs are awarded judgment against Staats Express, Inc., for the sum of $712,316.71, which represents: (1) $600,809.34 in withdrawal liability; (2) $47,982.44 in interest; (3) $60,080.93 in liquidated damages; and (4) $3,444.00 in attorney's fees and costs; and it is further

**ORDERED** that plaintiffs are awarded of interest for the time period beginning June 3, 2010 through the date judgment is entered in the amount of $181.06 per day.

**IT IS SO ORDERED.**

Date:   October 13, 2010

Norman A. Mordue
Chief United States District Court Judge

9